RANDY S. GROSSMAN
United States Attorney
MORGAN P. SUDER
Assistant U.S. Attorney
California Bar No. 292499
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-8819
Facsimile: (619) 546-7751
Email: morgan.suder@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: '23CV1000 W    DDL |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| CHRISTOPHER SANDERS, an individual, TAC AIR OPS, LLC, KAPOWSIN AIR SPORTS, LTD, THE CITY OF SAN DIEGO, a municipality, BROWN FIELD MUNICIPAL AIRPORT, and DOES 1-25, inclusive, | |
| Defendants. | |

Plaintiff the United States of America alleges as follows:

## INTRODUCTION

1. This is a civil action to recover monetary damages incurred by the United States as a result of an aircraft collision causing damage to property owned by the United States. The incident occurred on May 30, 2020 at Brown Field Municipal Airport in San Diego, California. Defendants' negligent actions caused the aircraft collision and resulting damage to the United States.

1

# THE PARTIES

2. The United States of America (the "United States" or "Plaintiff") brings this suit on behalf of the United States Department of the Navy (the "Navy"). The damaged aircraft at issue in this case is a United States Marine Corps (the "Marine Corps" or "USMC") MV-22 "Osprey" aircraft.

3. Defendant Christopher Sanders ("Sanders") is and was at all times pertinent to this action an individual who resides in this District.

4. Defendant Tac Air Ops, LLC d/b/a Skydive San Diego ("Skydive San Diego") is and was at all times pertinent to this action a California limited liability company with a principal place of business located in this District.

5. Defendant Kapowsin Air Sports, Ltd. ("Kapowsin") is and was at all times pertinent to this action a Washington State limited liability company with a principal place of business located in Shelton, Washington.

6. Defendants Sanders, Skydive San Diego, and Kapowsin are collectively referred to herein as the "Private Defendants."

7. Defendant the City of San Diego (the "City") is and was at all times pertinent to this action a municipality located in this District.

8. Defendant Brown Field Municipal Airport (the "Airport" or "Brown Field"), owned by the City, is and was at all times pertinent to this action a general aviation airport located in this District.

9. Defendants the City and the Airport are collectively referred to herein as the "Municipal Defendants."

10. The true names of DOES 1 through 25 (the "DOE Defendants"), whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who sues these Defendants under fictitious names. Each of the fictitiously named Defendants is responsible in some manner for the conduct alleged herein, without limitation, by way of furnishing the means and/or acting in capacities that create agency, *respondeat superior*, and/or predecessor or successor-in-interest relationships with Defendants Sanders, Skydive

San Diego, Kapowsin, the City, and/or the Airport (collectively, "Defendants") and each other. The DOE Defendants are private or public individuals, associations, companies, partnerships, corporations or otherwise that actively assisted and participated in the wrongful conduct alleged herein in ways that are currently unknown to Plaintiff. Plaintiff may amend or seek to amend this Complaint to allege the true names, capacities, and responsibilities of these DOE Defendants once they are ascertained, and to add additional facts and/or legal theories.

11. Unless otherwise indicated, Plaintiff makes all allegations in this Complaint against all Defendants, including the DOE Defendants, jointly and severally.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because the United States is the Plaintiff.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District and Defendants are subject to the Court's personal jurisdiction in this District.

## FACTS

14. On September 1, 1962, the United States transferred its interest in real property located at Township 18 South, Range 1 West, comprised of approximately 894.614 acres, along with the existing airport, then commonly known as Brown Field Naval Auxiliary Air Station ("NAAS"), with certain, *inter alia*, appurtenances, structures, fixtures, and equipment, to the City under and subject to the terms of a Quitclaim Deed ("the Deed"). A true and correct copy of the Deed is attached hereto as "Exhibit A," and the terms of the Deed are incorporated herein by reference. The property interest transferred by the United States is hereinafter referred to as the "Brown Field Municipal Airport" or the "Airport."

15. As a term of acceptance of the Deed, the City agreed that the Airport would be used for public purposes and on reasonable terms. In addition, the City agreed that, with certain express exceptions, it would maintain the Airport in good and serviceable condition.

16. As a further term of acceptance of the Deed, the City agreed to adequately clear and protect the aerial approaches to the Airport and to prevent the establishment or creation of airport hazards.

17. With some limitations, the United States retained, under the terms of the Deed, the right to use of the landing area of the Airport, without charge, provided that it contribute a reasonable share of the cost of maintaining and operating the landing area, commensurate with the use made by it.

18. The United States also retained, under the terms of the Deed, a reversionary interest in the Airport. Should the City fail, as a result of legal inability or otherwise, to comply with any of the terms, conditions, reservations or restrictions set forth in the Deed, the title, right of possession and all other rights transferred by the Deed to the City shall, at the option of the United States, revert back to the United States sixty (60) days following the date upon which demand to this effect is made in writing by the Administrator of the Federal Aviation Agency ("FAA"), unless cured.

19. From May 29, 2020 to May 31, 2020, the USMC, Marine Medium Tiltrotor Squadron ("VMM") 163, ordered a Local Area Detachment ("LAD") consisting of two MV-22 aircrafts fly from USMC Air Station Miramar to Brown Field in order to conduct routine training flights. These flights were conducted at all hours and in all conditions, in support of the greater mission of Marine Aviation; to attain and maintain combat readiness to support expeditionary maneuver warfare while conserving resources; and, specifically, to support the Marine Air-Ground Task Force ("MAGTF") Commander by providing assault support transport of combat troops, supplies, and equipment, day or night, under all weather conditions during expeditionary, joint, or combined operations. These missions were in the interest of national security and/or national defense.

20. On or about May 29, 2020, a VMM-163 MV-22 "Osprey" aircraft, tail number 166740, owned and operated by the United States under the callsign "Evil Eye 11" (the "MV-22"), conducted a training flight at Brown Field. At approximately 23:30, the MV-22 landed and taxied to its routine parking location, an area immediate to the Fixed Base

Operator ("FBO"), San Diego Jet Center.

21. Upon arrival at the routine parking location, the crew of the MV-22 discovered that the Airport failed to maintain adequate parking at its routine parking location, and the crew was forced to locate an alternate area to park the aircraft.

22. The alternate parking location selected by the crew of the MV-22 was on Ramp 6, in front of Hanger 2, at a location indicated by white lines near two other aircrafts, including a De Havilland DHC-6-100 "Twin Otter" aircraft, registration number N52FW (the "Twin Otter"), parked approximately 100-150 feet away. Upon information and belief, and unbeknownst to the crew of the MV-22, the alternate parking area presented hazards to the safe storage of the MV-22 that were not present at the routine parking location for the MV-22. Such hazards included, but were not limited to, increased congestion associated with neighboring aircraft traffic and parking.

23. Upon information and belief, the Twin Otter was, at all relevant times, owned by Kapowsin and operated by Skydive San Diego.

24. The MV-22 parked facing south, on the north/south running white parking line. The Twin Otter was parked to the east of the MV-22, facing north, in the painted 60' x 60' box.

25. After parking the aircraft, the crew of the MV-22 completed a turnaround inspection, including a post-flight checklist, and secured the aircraft in maintenance mode. The crew certified that the aircraft was left in good condition before departing Brown Field at approximately 00:30 on May 30, 2020.

26. Upon information and belief, at approximately 09:40 on May 30, 2020, after a brief external walk around the aircraft, the pilot of the Twin Otter, Christopher Sanders, removed the chock from the left landing gear and began the process of starting both engines of the aircraft. Sanders powered the right engine to 100 percent and the left engine to 50 percent. Before the right engine was fully powered, Sanders recognized that the aircraft was in motion and turning left.

27. After travelling more than 80 feet and turning 95 degrees to the left, the Twin Otter impacted the MV-22. Upon information and belief, Sanders then pulled the engine controls to idle and exited the aircraft.

28. Upon information and belief, the fire resulting from the collision was extinguished by individuals working in a nearby hangar. The damage to the MV-22 included, but was not limited to, the left proprotor, the left nacelle and engine, the nose wheel, the wing, and the right proprotor blade of the MV-22.

29. Upon information and belief, the Twin Otter was not in good working condition at the time of the incident. Although the FAA noted in the Incident Report that it conducted an inspection of the Twin Otter's hydraulics and brakes and found both operating normally, the FAA also documented a post-incident statement from Sanders in which he reported that, during the incident, neither the aircraft brakes nor the steering on the Twin Otter were responsive. Sanders also reported to the FAA that the brake pedals went to the floor, the tiller level could not be moved, and the right engine was making considerably more noise than the left engine.

30. Upon information and belief, the Twin Otter had recently undergone maintenance and/or service from Michael A. Fejer d/b/a AirCal Aviation ("AirCal Aviation") or individuals associated with, or at the direction of, AirCal Aviation. On or about March 2, 2023, AirCal Aviation filed for Chapter 13 Bankruptcy protection.

31. At all times pertinent to this action, Sanders was acting within the course and scope of his employment and was an agent of Skydive San Diego.

32. At all times pertinent to this action, Skydive San Diego was leasing the Twin Otter from Kapowsin, the owner and lessor of the aircraft.

33. On information and belief, Kapowsin authorized and/or directed the repairs conducted by or in association with AirCal Aviation and, as such, maintained operational control of the Twin Otter at all relevant times herein.

34. As a direct and proximate result of Defendants' negligence, the United States incurred damages to be determined at trial.

35. Defendants are indebted to the United States for the value of the repair and transportation costs of the MV-22 and, pursuant to 31 U.S.C. § 3717, for interest, administrative charges, and penalty charges.

36. This lawsuit is timely filed pursuant to 28 U.S.C. § 2415(a) & (b). Under the federal preemption doctrine, and Article VI of the U.S. Constitution, the United States is not subject to the presentment of claims or other notice requirements under the California Tort Claims Act ("CTCA"), Cal. Gov't Code § 900, et seq. Additionally, the United States is implicitly exempted from the presentment of claims requirement under Cal. Gov't Code § 905(i). Alternatively, the City has waived the notice requirements under the CTCA by agreeing to the proscribed demand procedures contained within the Deed.

## FIRST CAUSE OF ACTION

### (Negligence of the Private Defendants)

37. Plaintiff reasserts all allegations previously made.

38. Private Defendants had a duty to conduct their work and to operate and maintain the Twin Otter in a reasonably prudent manner to avoid a collision with another aircraft.

39. Private Defendants breached their duty by failing to take necessary precautions to avoid causing an aircraft collision, including, but not limited to, failing to repair and maintain the aircraft in good working condition.

40. As a direct, proximate, and legal result of Private Defendants' breach of duty, Private Defendants caused a collision with property owned by the United States.

41. As a direct, proximate, and legal result of Private Defendants' breach of duty, the United States has incurred damages as set forth herein.

42. Specifically, Sanders, as the pilot and operator of the Twin Otter, had a duty to ensure the aircraft was in good working condition and to operate the aircraft in a reasonably prudent manner to avoid a collision with another aircraft. Sanders breached these duties when he caused the Twin Otter to strike and damage the MV-22. Sanders' breach of duties was the proximate cause of the damages incurred by the Unites States.

43. At all times pertinent to this action, Sanders was acting within the course and scope of his employment and was an agent of Skydive San Diego. Sanders' failure to adequately maintain and pilot the aircraft was reasonably foreseeable by Skydive San Diego.

44. Additionally, Skydive San Diego, as the employer and lessee of the Twin Otter, had a duty to ensure that its employees, including Sanders, were adequately trained and supervised. Skydive San Diego breached its duties by failing to adequately train and supervise Sanders. Skydive San Diego's breach of duties was the proximate cause of the damages incurred by the Unites States.

45. Under CA Pub. Util. Code § 21404, Kapowsin, as the owner and lessor of the Twin Otter, is liable and responsible for injury to property resulting from a negligent or wrongful act or omission in the operation of the aircraft, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner.

46. Kapowsin had a duty to ensure that any pilot entrusted with its aircraft was adequately trained and able to pilot the aircraft safely and competently. Kapowsin breached that duty by allowing Skydive San Diego and/or Sanders to pilot the Twin Otter in a manner that caused it to collide with another aircraft. Kapowsin's breach of duties was the proximate cause of the damages incurred by the Unites States.

47. Upon information and belief, Kapowsin and/or Skydive San Diego breached their duty to maintain the Twin Otter in good working order, to inspect the Twin Otter before use, and/or to hire an insured mechanic. Kapowin and/or Skydive San Diego's breach of duties was the proximate cause of the damages incurred by the Unites States.

**SECOND CAUSE OF ACTION**

**(Negligence of the Municipal Defendants)**

48. Plaintiff reasserts all allegations previously made.

49. The Municipal Defendants, through the Department of Real Estate and Airport Management ("DREAM"), collect various fees for private individuals to use the

1 | Airport, including standard overnight aircraft parking fees, landing fees, hangar/tiedown fees, fuel flowage fees, commercial operating permit fees, gate access card fees, airport conference room fees, special use fees, overnight vehicle parking fees, copy machine fees, and late fees.

50. According to the Operational Policies and Procedures of the City of San Diego Airports Division, aircraft shall be parked in designated areas administered by the City of San Diego Airports staff and in areas rented to commercial operators. Aircraft owners or operators may also park aircraft in privately owned hangars erected on land leased from the City.

51. The Municipal Defendants negligently caused the overcrowding and mismanagement of the Airport's facilities, which prevented the United States from the use and enjoyment of its rights to use the Airport.

52. Specifically, the Municipal Defendants failed to adequately staff, train, and/or supervise the Airport to ensure that adequate and safe aircraft parking was available to both the United States and members of the public. The lack of ground support and oversight during the night of May 29, 2020 caused the United States to be exposed to heavily congested and poorly managed aircraft parking areas, which was the direct, proximate, and legal cause of the damages incurred by the Unites States.

53. The Municipal Defendants also had a duty to adequately supervise and inspect the Airport's tenants and their operations to ensure that they follow all FAA and airport regulations, policies, and procedures; maintain adequate insurance; and do not interfere with the usage rights of the United States. The Municipal Defendants' breach of these duties was the direct, proximate, and legal cause of the damages incurred by the Unites States.

54. Additionally, the Municipal Defendants were responsible for conducting inspections and providing oversight. Under California's negligent undertaking doctrine, the Airport generally undertook the obligation of providing overnight parking services to aircraft owners and operators. The Airport failed to exercise reasonable care in rendering

these services. The Airport oversold the available area for the overnight aircraft parking and failed to provide adequate supervision of the overnight aircraft parking. The Airport's failure to exercise reasonable care in rendering adequate overnight aircraft parking and/or supervision was a substantial factor in causing harm to the United States.

55. The Municipal Defendants owed a duty of "reasonable care and skill" in the performance of inspection, management, and oversight services set forth expressly its Operations Policies and Procedures and/or Minimum Operating Standards.

56. The Municipal Defendants negligently performed inspection, management, and/or oversight services because the Municipal Defendants failed to ensure that no person unreasonably obstruct, impair, or interfere with the use of the Airport by any other person, or unreasonably obstruct, impair, or interfere with the passage and safe, orderly, and efficient use of the Airport by any other person, vehicle, or aircraft.

### THIRD CAUSE OF ACTION

**(Breach of Restrictive Covenants by Municipal Defendants)**

57. Plaintiff reasserts all allegations previously made.

58. Under the Deed, the Municipal Defendants owe a duty to the United States to maintain the landing area and all structures, improvements, facilities and equipment transferred by the Deed in good and serviceable condition. The Municipal Defendants also owe a duty to the United States to adequately clear and protect the area approaches to the Airport by removing, lowering, relocating, marking or lighting or otherwise mitigating existing airport hazards and to prevent the establishment or creation of airport hazards.

59. The Municipal Defendants' failures to adequately manage, supervise, staff, and train its employees; to oversee and supervise its tenants; and/or to prevent the over-utilization of unreasonable congestion of the Airport facilities was a breach of the restrictive covenants contained within the Deed and the proximate cause of the damages incurred by the Unites States.

/ / /

/ / /

## REQUEST FOR RELIEF

WHEREFORE, the United States requests that this Court enter a judgment in its favor and against Defendants, as follows:

1. Awarding damages to the United States in the amount of at least $5,745,117.83;

2. Awarding the United States interest and penalties pursuant to 31 U.S.C. § 3717 and any other applicable provision of law;

3. Awarding the United States post-judgment interest at the statutory rate;

4. Awarding the United States its costs and attorneys' fees incurred herein pursuant to 28 U.S.C. § 2412(b) and any other applicable provision of law; and

5. Awarding the United States such further relief as may be appropriate.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

DATED: May 30, 2023

Respectfully Submitted,

RANDY S. GROSSMAN
United States Attorney

*s/ Morgan P. Suder*
MORGAN P. SUDER
Assistant U.S. Attorney

Attorneys for Plaintiff
United States of America